UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE PARK,<br>   Plaintiff,<br>  v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>   Defendant. | Case No. 19-cv-01254-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 19, 21 |

  Plaintiff Dale Park moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Park not disabled and therefore denied his application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 19.] The Commissioner cross-moves to affirm. [Docket No. 21.] For the reasons stated below, the court grants Park's motion.

**I. PROCEDURAL HISTORY**

  Park filed an application for Social Security Disability Insurance ("SSDI") benefits on April 29, 2015, alleging disability beginning February 20, 2013. Administrative Record ("AR") 223-24. An Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on October 20, 2017. AR 30-46. The ALJ found that Park has the following severe impairments: degenerative disc disease of the lumbar spine; lumbar radiculopathy; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder ("PTSD"); and opiate dependence. A.R. 36. The ALJ determined that Park has the following residual functional capacity ("RFC"):

> [He can] perform light work as defined in 20 CFR [§] 404.1567(b) with some exceptions. He can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday, with normal breaks. The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel,

> crouch, or crawl. The claimant is limited to the performance of work involving simple repetitive tasks. He can interact with coworkers and the public on no more than frequent basis.

A.R. 38.

Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including marker, routing clerk, and laundry worker, the ALJ concluded that Park is not disabled. A.R. 45-46.

After the Appeals Council denied review, Park sought review in this court. [Docket No. 1.]

## II.   ISSUES FOR REVIEW

1. Did the ALJ err in weighing the medical evidence?

2. Did the ALJ err in evaluating Park's credibility?

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the district court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d

1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. DISCUSSION

Park argues that the ALJ erred in evaluating the medical opinions about his mental health and in making a credibility determination.

### A. Weight Given to Medical Opinions

#### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the

rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2. Analysis

Park argues the ALJ erred by not giving sufficient weight to the opinions of treating physician Shahna G. Rogosin, M.D. and reviewing physicians Ben Young, M.D. and H. Amado, M.D.

#### a. Dr. Rogosin

Dr. Shahna G. Rogosin, Park's treating psychiatrist, completed a Mental Impairment Questionnaire on May 30, 2017. A.R. 1406-10. She noted that her opinions were based on Park's history and medical file and progress and office notes. She wrote that she first treated Park on July 10, 2008 and had had contact with him monthly. A.R. 1406. The record contains treatment notes by Dr. Rogosin from March 2015 through May 2017. *See* Exs. 10F, 14F. Dr. Rogosin noted Park's diagnoses of generalized anxiety disorder; major depressive disorder; and PTSD. She also noted that Park's treatment included medication management, therapy, and group therapy to which Park had a "poor-fair response with recurrent symptoms waxing and waning." She opined that Park's mental health impairment exacerbates his experience of pain and other physical symptoms, and his pain increases "with increasing anxiety + depression." A.R. 1406.

Dr. Rogosin identified numerous symptoms that Park experiences, including "significant

deficits in complex attention; executive function; learning and memory; language; perceptual-motor, or social cognition," "delusions or hallucinations," panic attacks, "difficulty organizing tasks," and "difficulty sustaining attention." A.R. 1407. She opined that Park is moderately or markedly impaired in several areas related to his ability to adapt or manage himself. According to Dr. Rogosin, Park "has been unable to work due to severe symptoms of anxiety, depression, perceptual disturbances including hallucinations when [his] depression is severe." A.R. 1408. She further opined that Park would be absent for four days or more per month as a result of his impairments, and that he would be "off task" more than 30% of an eight-hour workday due to his mental and physical limitations. A.R. 1408.

Dr. Rogosin opined that Park is moderately to markedly impaired in his ability to understand, remember, and apply information. He is also markedly impaired in his ability to interact with others and concentrate, persist, or maintain pace. A.R. 1409. She also opined that his impairments "worsen with stress/pain." Finally, in response to a question asking for a description of "any additional reasons not covered above why your patient would have difficulty working at a regular job on a sustained basis," Dr. Rogosin wrote: "Patient has severe symptoms which have not resolved despite comprehensive treatment [illegible], complicated by multiple medical issues." A.R. 1410.

The ALJ accorded "little weight" to Dr. Rogosin's opinion, stating "the extreme mental limitations set forth by Dr. Rogosin [are] inconsistent with relevant mental health records in evidence, including multiple reports of normal or unremarkable psychiatric examinations." A.R. 42-43. The ALJ cited two examples of such "normal or unremarkable psychiatric examinations," Exhibit 1F at 11-13 and 28-29 (located at A.R. 380-82 and 397-98). A.R. 43.

Dr. Rogosin's opinion was inconsistent with the other mental health opinion evidence in the record. Specifically, state agency consultants Dr. Ben Young and Dr. H. Amado each reviewed the records and opined that Park is only moderately impaired in the ability to maintain concentration, persistence, or pace, as opposed to Dr. Rogosin's opinion that Park is "markedly impaired" in that area. *See* A.R. 118, 131, 1409. They also opined that Park "can perform simple 1-2 step tasks." A.R. 118, 135. Accordingly, the ALJ was required to provide "specific and

5

legitimate reasons" supported by substantial evidence to discount Dr. Rogosin's opinion. *See Lester*, 81 F.3d at 830-31.

The court finds that the ALJ did not meet this standard. As noted, the ALJ cited two examples of the "multiple reports of normal or unremarkable psychiatric examinations" that supported his decision to give "little weight" to Dr. Rogosin's opinion. *See* A.R. 42-43. The first example is from a summary of a March 21, 2013 appointment at the Stanford Medical Outpatient Clinic Pain Management Center by Ofer Wellisch, M.D., supervised by Ian R. Carroll, M.D., Assistant Professor. In relevant part, Dr. Wellisch wrote the following under the heading "Psychiatric": "[o]riented to time, place and person, with moderate agitation." He also wrote that Park was "[a]wake, [a]ert, [f]ollows commands." A.R. 380-82. The only other reference to Park's mental health from that visit is a note that Park "should continue to receive psychotherapy as well as marital counseling going forward, as well as psychiatric followup in the community, which he is already receiving." A.R. 383.

The second example is an excerpt of a summary of an April 3, 2013 appointment at Stanford's Pain Management Center. Dr. Wellisch, this time supervised by Meredith Barad, M.D., Clinical Assistant Professor of Anesthesia (Pain Management) and Neurology & Neurological Sciences, again wrote that Park was "[o]riented to time, place and person, with moderate agitation" and "[a]wake, [a]lert, [f]ollows commands." A.R. 397-98.

The two examples cited by the ALJ of the "multiple reports of normal or unremarkable psychiatric examinations" are both from visits to a pain management clinic. There is no indication that the author, Dr. Wellisch, is a psychologist or psychiatrist or otherwise specializes in mental health. Further, the characterization of both examinations as "unremarkable" is not entirely accurate, as Dr. Wellisch noted on both occasions that Park was moderately agitated.

More importantly, the examples the ALJ cited are from March and April 2013. In May 2013, only one month after the second visit to the pain management clinic, Park was hospitalized for nearly two weeks due to worsening depression, suicidal ideation, panic attacks, and psychotic episodes, including auditory and visual hallucinations. *See* A.R. 420, 407. He was discharged from the hospital immediately into Momentum for Mental Health, a residential treatment program,

6

where he remained for six months, until October 2013. *See* A.R. 420-451. At an August 2013 evaluation, during his stay at the residential treatment program, Park continued to endorse intermittent suicidal ideation and daily panic attacks triggered by interactions with his spouse. A.R. 407. He remained in the residential treatment program with daily groups and regular treatment until he returned home in October 2013 and began an outpatient program. A.R. 422-50. After returning home, Park continued to report experiencing visual hallucinations and "vague paranoia." A.R. 451.

The records contain evidence of two additional hospitalizations for psychiatric treatment after 2013. On September 12, 2014, Park was hospitalized for treatment of depressive disorder with psychotic features, anxiety, and personality disorder after superficially cutting his wrists. He remained hospitalized until September 26, 2014. A.R. 847-869. On December 30, 2014, Park was admitted to a hospital on a 72-hour hold as a danger to himself due to suicidal ideation. A.R. 457. He was treated in individual and group sessions and was described as "passive aggressive and imperious." A.R. 458. On January 1, 2015, the hospital discharged him to stay with his sister after "regain[ing] his emotional equanimity." A.R. 458.

Further, the records contain evidence of regular treatment by Dr. Rogosin for therapy and medication management from 2015 through 2017. She consistently diagnosed him with generalized anxiety disorder, major depressive disorder, and PTSD. The records of her sessions with Park indicate that his reports and symptoms of depression waxed and waned, with periods of increasing depression marked by lower energy, tiredness, anger, poor sleep, paranoia, hallucinations, poor attention and concentration, and increased anxiety. *See* A.R. 1373-1404.

The ALJ did not discuss any of this evidence at length, noting cursorily in the opinion that Park "received mental health treatment . . . at Momentum for Mental Health" between May and November 2013, without acknowledging that this period included a nearly-two week hospitalization followed by six months at an inpatient program. *See* A.R. 41. He also did not discuss Park's September 2014 and December 2014 hospitalizations at all in the opinion. Instead, he relied upon two early consultations with physicians who do not appear to specialize in mental heath and that pre-date a significant worsening of Park's mental health. The Ninth Circuit has

7

1    instructed that "treatment records must be viewed in light of the overall diagnostic record." *See*

2    *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also id*. at 1162 (noting that treatment

3    notes documenting improvement in a condition "must be 'read in context of the overall diagnostic

4    picture' the provider draws." (citation and quotation omitted)).  The ALJ failed to do so, and aside

5    from the reason discussed above, the ALJ did not state any other reasons for discounting Dr.

6    Rogosin's opinion.  The court concludes that the ALJ erred in according only "little weight" to Dr.

7    Rogosin's opinion.

### b. Drs. Young and Amado

State agency consultants Dr. Ben Young and Dr. H. Amado reviewed the medical records in August 2015 and November 2015, respectively.  As noted, each opined that Park is moderately impaired in the ability to maintain concentration, persistence, or pace.  *See* A.R. 118, 131.  They also opined that Park is moderately limited in his ability "to work in coordination with or in proximity to others without being distracted by them," "interact appropriately with the general public," and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  According to Dr. Young and Dr. Amado, Park "can perform simple 1-2 step tasks."  A.R. 118-19, 135-36.

The ALJ gave these opinions "some, but not significant or great weight," stating his agreement that Park "would be limited to the performance of work involving simple repetitive tasks" but that "the mental limitations set forth by Dr. Young and Dr. Amado to be otherwise inconsistent with relevant mental health records in evidence, including multiple reports of normal or unremarkable psychiatric examinations."  A.R. 44.  The ALJ cited the same two observations by Dr. Wellisch in March and April 2013 discussed above as examples of "normal or unremarkable psychiatric examinations."  A.R. 44.  An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."  *Sousa*, 143 F.3d at 1244.  As discussed above, the reason offered by the ALJ does not hold up under scrutiny because it ignores nearly all of the evidence of Park's impaired mental health that postdates the examples he cited, including evidence of numerous hospitalizations and worsening symptoms.  Accordingly, the court concludes that the ALJ erred in according only "some weight" to the opinions of Dr.

8

Young and Dr. Amado.

### B. Credibility Assessment

Park next argues that the ALJ erred in assessing his credibility.

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345

(9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2.     Analysis

The ALJ found that Park's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  A.R. 40.

The ALJ provided two reasons for discounting Park's testimony: 1) that "there are some inconsistencies between [Park's] allegations and his self-reported daily activities" and 2) that Park's "assertion that he is unable to work [is] inconsistent with the relevant medical evidence of record, including multiple reports of normal or unremarkable physical and psychiatric examinations."  A.R. 40.

As to the first reason, the ALJ wrote that despite Park's assertion that he is "limited in his ability to do work at any exertional level," he is able to care for his daughter, shop for personal items, drive a car, independently handle his personal finances, and have regular interaction with family members.  A.R. 40.  This is not a "specific, clear and convincing" reason for rejecting Park's testimony.  *See Vasquez*, 572 F.3d at 591.  The Ninth Circuit has instructed that "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quotation omitted).  However, "the ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quotation omitted).  The ALJ did not make any such findings in his opinion.  Moreover, the ALJ disregarded Park's testimony at the hearing about his ability to perform some

10

1    of the activities described by the ALJ.  For example, when the ALJ asked Park if he uses a "web
2    portal to monitor his daughter's academic progress," Park testified that he does not and that his
3    wife handles those things.  *See* A.R. 40, 82.  He also testified that his daughter's nanny assists her
4    with her schoolwork and that he is not involved with that, and that he no longer picks her up from
5    school.  A.R. 40, 82, 90.

6    As to the second reason for discounting Park's credibility, the ALJ first cited the same two
7    observations by Dr. Wellisch in March and April 2013 discussed above as examples of "normal or
8    unremarkable . . . psychiatric examinations."  A.R. 44.  Given the timing of these observations and
9    the fact that the observations were not by a mental health specialist, this reason is not legally
10   sufficient.

11   The ALJ next cited Exhibit 13F at 4-5, 14-15, and 22-23 (located at A.R. 1350-51, 1360-
12   61, and 1368-69) to support his adverse credibility finding.  These are treatment notes by Venkat
13   Aachi, M.D., a pain management specialist, from appointments on June 23, 2016, September 11,
14   2016, and February 26, 2017.  It is not clear how these notes support the ALJ's credibility
15   determination.  On June 23, 2016, Dr. Aachi examined Park's sensations, motor strength, and deep
16   tendon reflexes.  The results appear normal, but Dr. Aachi nonetheless noted chronic pain,
17   abdominal pain, low back pain, and right leg pain as his impressions.  A.R. 1369.  At a follow up
18   visit on September 11, 2016, Dr. Aachi noted chronic ongoing pain and abdominal pain as his
19   impressions.  A.R. 1361.  His impression of Park at a February 26, 2017 visit was of chronic pain.
20   A.R. 1351.  The ALJ did not explain his statement that these are "unremarkable physical . . .
21   examinations" or explain how they undermined Park's credibility.

22   The court concludes that the ALJ erred in assessing Park's credibility.
23   //
24   //
25   //
26   //
27   //
28

## V.      CONCLUSION

For the foregoing reasons, Park's motion for summary judgment is granted.  This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: August 31, 2020

_____
Donna M. Ryu
United States Magistrate Judge

